United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC BELL TELEPHONE COMPANY, a California corporation doing business as AT&T CALIFORNIA, | No. C-05-4723 MMC |
| Plaintiff and Petitioner | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND/OR TO ABSTAIN** |
| v. | (Docket No. 20) |
| THE CITY OF WALNUT CREEK and THE CITY COUNCIL OF THE CITY OF WALNUT CREEK, | |
| Defendants and Respondents. | |

Before the Court is the motion filed February 27, 2006 by defendants City of Walnut Creek and the City Council of the City of Walnut Creek (jointly, "City") seeking dismissal, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and/or abstention. Plaintiff Pacific Bell Telephone Company, doing business as AT&T California ("AT&T") has filed opposition to the motion; the City has filed a reply.  Having considered the papers filed in support of and in opposition to the motion, and the arguments of counsel at the April 7, 2006 hearing, the Court rules as follows.

/ /

**BACKGROUND**

In October 2004, AT&T announced plans to implement a project, titled "Project Lightspeed," to upgrade its telecommunications network.  (See Compl. ¶ 20.)  AT&T alleges the upgrades under Project Lightspeed will allow it to provide new and improved services to its customers, including "Internet Protocol ('IP')-based video services."  (See id. ¶¶ 1, 21.)

On June 7, 2005, AT&T submitted to the City an application for an encroachment permit to perform upgrades to its network under Project Lightspeed.  (See id. ¶ 24.)  In particular, AT&T sought permission to perform "line conditioning" work to "remove certain bridge taps on existing aerial twisted-pair copper lines along a one-block stretch of Walnut Avenue."  (See id. ¶¶ 23-24.)  On June 21, 2005, the City granted Permit No. EP05-0434 ("Permit") to AT&T, on the condition ("Franchise Condition") that: "[b]y accepting th[e] permit, [AT&T] agrees on behalf of itself and its affiliates that it will not provide video programming . . . over facilities located with [sic] the City's rights-of-way to subscribers within the City without first obtaining a cable franchise or an open video system franchise from the City."  (See id. ¶ 26.)

On July 1, 2005, AT&T appealed the Franchise Condition to the City Council.  (See id. ¶ 31.)  On October 18, 2005, AT&T's appeal was denied.  (See id. ¶ 34.)

AT&T alleges the City has informed AT&T that the Franchise Condition will "be attached to any and all permits for any Project Lightspeed-related work as determined by the City, in its discretion, on a case-by-case basis." (See id. ¶ 33.)  As a result, AT&T alleges, AT&T has halted its upgrade activities that require permits in Walnut Creek.  (See id.)

On November 17, 2005, AT&T filed the instant action, alleging the Franchise Condition violates federal and state law.  In its first claim for relief, AT&T seeks a declaratory judgment that the Franchise Condition is preempted by the federal Telecommunications Act of 1996 ("TCA"), and, in particular, by 47 U.S.C. § 253.  (See Compl. ¶¶ 36-43.)  Section 253 provides: "No State or local statute or regulation, or other

2

1  State or local legal requirement, may prohibit or have the effect of prohibiting the ability of

2  any entity to provide any interstate or intrastate telecommunications service."  See 47

3  U.S.C. § 253.  AT&T alleges that the Franchise Condition either prohibits, or has the effect

4  of prohibiting, the provision of the telecommunications services AT&T intends to provide.

5  (See Compl. ¶ 39.)

6       In its second claim for relief, AT&T seeks a declaratory judgment that the Franchise

7  Condition is preempted by the federal Communications Act of 1934 ("Cable Act"), and in

8  particular by 47 U.S.C. § 541(b)(1).  (See Compl. ¶¶ 1(d), 44-55.)  Under 47 U.S.C.

9  § 541(b)(1), subject to specified exceptions, "a cable operator may not provide cable

10  service without a franchise."  See 47 U.S.C. § 541(b)(1).  AT&T contends that, under the

11  Cable Act, cable franchise requirements apply only to cable operators that provide cable

12  services over cable systems; AT&T further contends it is not a cable operator within the

13  meaning of the Cable Act and that, consequently, it is not required to obtain a cable

14  franchise prior to offering video services under Project Lightspeed.  (See Compl. ¶¶ 47-50.)

15       In its third claim for relief, AT&T alleges the State of California has granted AT&T a

16  franchise, pursuant to § 7901 of the California Public Utilities Code, authorizing AT&T to

17  access the public rights of way ("PROWs") for the purpose of installing and operating its

18  telephone lines.  (See Compl. ¶ 57.)  AT&T seeks a declaratory judgment that the above-

19  referenced franchise from the state authorizes AT&T to use its telephone lines to provide

20  any form of electronic communication, including video, without obtaining an additional

21  franchise from the City.  (See id. ¶¶ 56-63.)

22       In its fourth claim for relief, AT&T alleges the City has deprived AT&T of its property

23  rights in its § 7901 franchise, without due process, in violation of the Fifth and Fourteenth

24  Amendments to the United States Constitution.  (See id. ¶¶ 64-67.)

25       In its fifth claim for relief, AT&T alleges the City's imposition of the Franchise

26  Condition has unlawfully interfered with AT&T's rights under the First Amendment to the

27  United States Constitution.  (See id. ¶¶ 68-72.)

28       In its sixth claim for relief, AT&T asserts a claim for relief pursuant to 42 U.S.C.

1   § 1983.  (<u>See</u> Compl. ¶¶ 73-77.)  AT&T alleges "the City's actions violate [AT&T's] rights,

2   privileges and immunities under the Due Process Clause and the Contracts Clause of the

3   United States Constitution, the TCA (47 U.S.C. § 253), the Cable Act and FCC rules,

4   regulations and order promulgated pursuant thereto."  (<u>See</u> Compl. ¶ 76.)

5        In its seventh claim for relief, AT&T seeks a declaratory judgment that it "has the

6   right to access the PROWs to install, upgrade and maintain its facilities, free from the City's

7   Franchise Condition and any requirement for a cable franchise agreement."  (<u>See</u> Compl.

8   ¶¶ 78-81.)

9        In its eighth claim for relief, AT&T seeks a declaratory judgment that § 53066(e) of

10  the California Government Code "does not apply to [AT&T's] telephone lines and does not

11  require [AT&T] to obtain a franchise in order to provide video services via its telephone

12  lines."  (<u>See</u> Compl. ¶¶ 82-92.)  Section 53066(e) provides: "No person may commence the

13  construction of a cable television system without a franchise or license granted by the city,

14  county, or city and county in which the cable television system will operate."  <u>See</u> Cal. Gov.

15  Code § 53066(e).  AT&T further seeks a declaratory judgment that the Franchise Condition

16  imposes "new requirements inconsistent with a state utility franchise" pursuant to § 7901

17  and "violate[s] both the federal and state constitutional prohibitions on impairment of

18  contracts."  (<u>See</u> Compl. ¶ 86.)

19       In its ninth claim for relief, AT&T seeks a writ of mandate, pursuant to §§ 1085 and

20  1094.5 of the California Code of Civil Procedure, to set aside the City's imposition of the

21  Franchise Condition.  (<u>See</u> Compl. ¶¶ 93-104.)

22                              **LEGAL STANDARD**

23       A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears

24  beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

25  entitle him to relief."  <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  Dismissal can be

26  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

27  under a cognizable legal theory.  <u>See</u> <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699

28  (9th Cir. 1990).

                                        4

1    Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any

2  material beyond the pleadings.  See Hal Roach Studios, Inc. v. Richard Feiner And Co.,

3  Inc., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).  Material that is properly submitted as part

4  of the complaint, however, may be considered.  See id.  Documents whose contents are

5  alleged in the complaint, and whose authenticity no party questions, but which are not

6  physically attached to the pleading, also may be considered.  See Branch v. Tunnell, 14

7  F.3d 449, 454 (9th Cir. 1994).  In addition, the Court may consider any document "the

8  authenticity of which is not contested, and upon which the plaintiff's complaint necessarily

9  relies," regardless of whether the document is referred to in the complaint.  See Parrino v.

10  FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).  Finally, the Court may consider matters that

11  are subject to judicial notice.  See Mack v. South Bay Beer Distributors, Inc., 798 F.2d

12  1279, 1282 (9th Cir. 1986).

13    In analyzing a motion to dismiss, the Court must accept as true all material

14  allegations in the complaint, and construe them in the light most favorable to the

15  nonmoving party.  See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

16  The Court may disregard factual allegations if such allegations are contradicted by the facts

17  established by reference to exhibits attached to the complaint.  See Durning v. First Boston

18  Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  Conclusory allegations, unsupported by the

19  facts alleged, need not be accepted as true.  See Holden v. Hagopian, 978 F.2d 1115,

20  1121 (9th Cir. 1992).

21                                          **DISCUSSION**

22              **1.  First Claim – TCA**

23    In its first claim for relief, AT&T seeks a declaratory judgment that the Franchise

24  Condition is preempted by the TCA, and in particular by 47 U.S.C. § 253.  (See Compl.

25  ¶¶ 36-43.)  As noted, section 253 provides: "No State or local statute or regulation, or other

26  State or local legal requirement, may prohibit or have the effect of prohibiting the ability of

27  any entity to provide any interstate or intrastate telecommunications service."  See 47

28  U.S.C. § 253(a).  "Section 253(a) preempts regulations that not only prohibit outright the

                                              5

1   ability of any entity to provide telecommunications services, but also those that may have

2   the effect of prohibiting the provision of such services."  See City of Auburn v. Qwest Corp.,

3   260 F.3d 1160, 1175 (9th Cir. 2001) (internal quotations and citation omitted).  AT&T

4   alleges that the Franchise Condition prohibits, or has the effect of prohibiting, the provision

5   of the telecommunications services AT&T intends to provide.  (See Compl. ¶ 39.)

6        Defendants argue that the first claim for relief is subject to dismissal because the

7   Franchise Condition only limits AT&T's ability to provide video programming and does not

8   regulate AT&T's provision of telecommunications services.  In its opposition, AT&T states it

9   "does not assert a § 253 violation on the grounds that the City's franchise condition may

10  prohibit the provision of IP-video services."  (See Opp. at 5.)  Rather, according to AT&T,

11  "because the IP-video services will be integrated with existing telecommunications services

12  and transported along the same network, imposing the franchise condition will not only

13  prohibit the provision of video services, but also 'may have the effect' of prohibiting the

14  provision of voice and other communications services that would be available upon the

15  facilities upgrade."  (See id.)  AT&T further states that it "has not asserted in this case (or

16  anywhere else) that IP video services are 'telecommunications service[.]'"  (See id. at 7.)

17       AT&T fails to adequately allege how the Franchise Condition may affect its provision

18  of telecommunication services.  AT&T alleges the City granted the Permit allowing AT&T to

19  perform the requested line conditioning work, and that AT&T completed that work.  (See

20  Compl. ¶¶ 25-26.)  The Franchise Condition precludes AT&T only from providing "video

21  programming . . . without first obtaining a cable franchise or an open video system

22  franchise from the City."  (See id. ¶ 26.)  As noted, AT&T concedes video programming is

23  not "telecommunications service" within the meaning of the TCA.  Although AT&T alleges

24  that AT&T "has halted any of its upgrade activities which require permits in Walnut Creek,"

25  (see id. ¶ 33), the Franchise Condition does not require AT&T to do so.  There is no

26  allegation that the City has denied AT&T any requested permit for the upgrading of AT&T's

27  telecommunications facilities; indeed, the one permit AT&T alleges it sought was granted.

28       Accordingly, defendants' motion to dismiss the first claim for relief will be GRANTED

6

1  and such claim will be DISMISSED with leave to amend.

2  **2.  Second Claim – Cable Act**

3  In its second claim for relief, AT&T seeks a declaratory judgment that the Franchise

4  Condition is preempted by the Cable Act.  (See Compl. ¶¶ 44-55.)  Defendants move to

5  dismiss AT&T's second claim for relief on the ground that AT&T's proposed video

6  programming is a cable service and that the Cable Act specifically authorizes the

7  franchising of cable services.  Defendants further argue that even if AT&T's video

8  programming is not a cable service, the Cable Act does not preclude local regulation of

9  non-cable video services.

10  **a.  Cable Service**

11  Subject to exceptions that no party contends are applicable in the instant case, the

12  Cable Act states that "a cable operator may not provide cable service without a franchise."

13  See 47 U.S.C. § 541(b)(1).  A "cable operator" is defined as "any person or group of

14  persons (A) who provides cable service over a cable system and directly or through one or

15  more affiliates owns a significant interest in such cable system, or (B) who otherwise

16  controls or is responsible for, through any arrangement, the management and operation of

17  such a cable system[.]"  See 47 U.S.C. § 522(5).  "Cable service" is defined as:

18  (A) the one-way transmission to subscribers of (i) video programming, or (ii) other programming service, and

19
20  (B) subscriber interaction, if any, which is required for the selection or use of such video programming or other programming service.

21  See 47 U.S.C. § 522(6).

22  Defendants argue, relying on the allegations of paragraph 49 of the complaint, that

23  AT&T's proposed video programming constitutes "cable service" within the meaning of

24  § 522(6).  AT&T expressly alleges, however, that its "video service is a two-way interactive

25  service," (see Compl. ¶ 49), and that its "network is a two-way switched network that is

26  designed to transmit packetized data, including voice and video indifferently, in a call-based

27  or session-based format controlled by the user," (see id. ¶ 47).  The Court cannot conclude

28  from such allegations, as a matter of law, that AT&T's proposed video programming

7

1    constitutes "cable service" within the meaning of the Cable Act.  Whether AT&T's video

2    programming in fact is a two-way interactive service is an evidentiary matter to be

3    addressed in future proceedings.

4          Defendants additionally argue that the structure of the Cable Act supports a finding

5    that AT&T is engaging in cable service, within the meaning of the Cable Act, by providing

6    video programming to its subscribers.  As noted by defendants, the Cable Act provides that

7    when a "common carrier is providing video programming to its subscribers in any manner

8    other than" through radio-based systems, common carriage of video traffic, or an open

9    video system, it is subject to the requirements of Subchapter V-A of the Cable Act.  See 47

10   U.S.C. § 571(a)(3).  Subchapter V-A is titled "Cable Communications" and includes the

11   statutory requirement that cable operators may not provide cable service without a

12   franchise.  As defendants note, § 571(a)(3), on its face, can be read to impose cable

13   franchising requirements on common carriers who provide "video programming to [their]

14   subscribers in any manner" other than through radio-based systems, common carriage of

15   video traffic, or an open video system.

16         AT&T does not contend it is providing its video programming by means of a radio-

17   based system, common carriage of video traffic, or an open video system.  Rather, AT&T

18   argues that § 571(a)(3) requires AT&T to comply with cable franchising requirements only if

19   it is a cable operator providing cable service.  As noted, a "cable operator" provides "cable

20   service over a cable system" or otherwise controls a cable system.  See 47 U.S.C.

21   § 522(5).  The definition of "cable system" includes a facility of a common carrier "to the

22   extent such facility is used in the transmission of video programming directly to subscribers,

23   unless the extent of such use is solely to provide interactive on-demand services."  See 47

24   U.S.C. § 522(7)(C).  By excluding from the definition of "cable system" common carrier

25   facilities that provide only interactive on-demand services, § 522(7)(C) arguably

26   distinguishes interactive on-demand services from "cable service," which requires "one-way

27   transmission" of video programming.  See 47 U.S.C. § 522(6)(A).  By exempting common

28   carriers' video programming facilities from the definition of "cable system" where such

8

1   facilities provide only interactive on-demand services, § 522(7)(C) arguably supports

2   AT&T's contention that § 571(a)(3) imposes cable franchising requirements on common

3   carriers only when they act as cable operators providing cable service.

4          The Court need not resolve this dispute, however, because, for the reasons set forth

5   below, the Court agrees with defendants that even if the Cable Act does not require AT&T

6   to obtain a cable franchise, it does not preclude local authorities from imposing such a

7   requirement.

8                          **b.  Regulation of Non-Cable Video Services**

9          Defendants argue that even if AT&T's video programming is not "cable service," the

10  Cable Act does not preclude local regulation of non-cable video programming.

11         The Cable Act provides that "any provision of law of any State, political subdivision,

12  or agency thereof . . . which is inconsistent with [the Cable Act] shall be deemed to be

13  preempted and superseded."  See 47 U.S.C. § 556(c).  Defendants argue that "[t]he Cable

14  Act does not even discuss the franchising of non-cable services, so local franchising of

15  non-cable services is in no way inconsistent with the Cable Act."  (See Motion at 15.)

16         In support thereof, defendants rely on City of Dallas, Texas v. Federal

17  Communications Commission,165 F.3d 341 (5th Cir. 1999), in which the Fifth Circuit held

18  the Cable Act does not preclude local governments from requiring "open video system"

19  ("OVS") operators to obtain a franchise, see id. at 347-49, despite the Cable Act's express

20  statement that the franchising requirements applicable to cable operators do not apply to

21  OVS operators.  See id. at 347 (citing 47 U.S.C. § 573(c)(1)(C)).  The Fifth Circuit held that

22  while § 541 "may have expressly recognized the power of localities to impose franchise

23  requirements, it did not create that power, and elimination of [§ 541] for OVS operators

24  does not eliminate local franchising authority."  See id. at 348.  Relying on the Supreme

25  Court's opinion in Gregory v. Ashcroft, 501 U.S. 452 (1991), the Fifth Circuit further noted

26  that "if Congress intends to preempt a power traditionally exercised by a state or local

27  government, 'it must make its intention to do so 'unmistakably clear in the language of the

28  statute.'"  See id. at 347-48 (quoting Gregory, 501 U.S. at 460).  Accordingly, the Fifth

1   Circuit concluded, § 573(c)(1)(C) expressly exempts OVS operators from the federal

2   requirement of a franchise, but does not preempt "the localities' freedom to impose

3   franchise requirements as they so fit[.]" See id. at 348.  City of Dallas thus stands for the

4   proposition that the Cable Act does not preclude local governments from imposing

5   franchising requirements on providers of video programming where such regulation is not

6   expressly forbidden by the Cable Act.  See id.

7          In an effort to distinguish City of Dallas, AT&T contends the City has no authority

8   under California state law to impose franchise requirements on non-cable video

9   programming.  Such argument has no relevance, however, with respect to the second

10  claim for relief, which seeks a declaration that the federal Cable Act precludes local

11  authorities from imposing such requirements.  AT&T points to no provision of the Cable Act

12  that precludes local authorities from imposing franchise requirements for AT&T's video

13  programming services.  Although AT&T observes, in its opposition, that it is subject to

14  regulation under the Cable Act as a multi-channel video programming distributor ("MVPD"),

15  it points to no portion of the Cable Act that bars local authorities from imposing franchise

16  requirements on MVPDs.

17         As AT&T has not demonstrated that local governments are precluded under the

18  Cable Act from imposing franchise conditions on AT&T, its claim under the Cable Act is

19  subject to dismissal.  If AT&T is a cable operator, the Cable Act itself requires it to obtain a

20  cable franchise.  See 47 U.S.C. § 541(b)(1).  If AT&T is not a cable operator, nothing in the

21  Cable Act bars local authorities from imposing franchise requirements on AT&T's provision

22  of non-cable video programming.

23         Accordingly, defendants' motion to dismiss the second claim for relief will be

24  GRANTED, on the ground that even if AT&T's video programming is not "cable service"

25  within the meaning of the Cable Act, the Cable Act does not preclude local regulation of

26  non-cable video programming.

27                    **3.  Third Claim – California Public Utilities Code § 7901**

28         In its third claim for relief, AT&T seeks a declaratory judgment that § 7901 of the

10

1  California Public Utilities Code authorizes it to transport video programming over its

2  telephone lines without obtaining a separate franchise from the City.  Defendants argue

3  that the Court, under 28 U.S.C. § 1367(c)(1), should decline to exercise supplemental

4  jurisdiction over AT&T's third claim for relief, on the ground such claim raises novel and

5  complex issues of state law.  See 28 U.S.C. § 1367(c)(1) (providing district court may

6  decline to exercise supplemental jurisdiction over a claim that "raises a novel or complex

7  issue of State law").

8      Section 7901 provides: "Telegraph or telephone corporations may construct lines of

9  telegraph or telephone lines along and upon any public road or highway, along or across

10  any of the waters or lands within this State, and may erect poles, posts, piers, or abutments

11  for supporting the insulators, wires, and other necessary fixtures of their lines, in such

12  manner and at such points as not to incommode the public use of the road or highway or

13  interrupt the navigation of the waters."  See Cal. Pub. Util. Code § 7901.

14      According to AT&T, the law is clear that § 7901 authorizes it to transport any type of

15  signal over its telephone lines without obtaining a franchise from any local authority.  AT&T

16  points out that more than 50 years ago, the California Supreme Court rejected the

17  contention that § 7901 grants telephone companies only the right to use its telephone lines

18  for the transmission of "articulate speech," holding instead that § 7901 "authorizes

19  telephone companies to construct their lines along public highways, [and] places no

20  restriction upon what may be transmitted by means of electrical impulses over those lines."

21  See Pacific Telephone and Telegraph Co. v. City of Los Angeles, 44 Cal. 2d 272, 281-82

22  (1955) (affirming judgment entitling telephone company to use its lines "for transmitting

23  telephone messages, telegraph messages, teletypewriter message, telephotographs,

24  program services (including radio and television broadcasts) and any other

25  communications services by means of the transmission of electrical impulses").  In the

26  Supreme Court's analysis, "[i]f the state franchise granted to a telephone company were

27  limited to the transmission of 'articulate speech,' the company would be required to obtain

28  numerous local franchises in order to give its subscribers the benefit of the many and

11

1   varied uses of telephone wires made possible by scientific development," a result that

2   "would defeat the very purpose of section [7901], as it would interfere substantially with the

3   ability of telephone companies to provide adequate communication service to the people of

4   the state." See id. at 282.

5          As defendants point out, however, Pacific Telephone was decided long before the

6   enaction, in 1989, of § 53066(e) of the California Government Code, which provides that

7   "[n]o person may commence the construction of a cable television system without a

8   franchise or license granted by the city, county, or city and county in which the cable

9   television system will operate." See Cal. Gov. Code § 53066(e).  By its plain language,

10  § 53066(e) contains no exception for telephone companies or for anyone else.  Moreover,

11  although the law is settled that the rights granted by § 7901 are "vested rights" that

12  "cannot be taken away by the state, even though the legislature should repeal the section,

13  or by the people through a constitutional provision," see County of Los Angeles v.

14  Southern California Telephone Co., 32 Cal. 2d 378, 385 (1948) (interpreting predecessor

15  of § 7901), whether § 7901 in fact grants any rights to telephone companies with

16  respect to the provision of video programming presents a novel issue of law.  No

17  court has addressed whether § 7901 authorizes telephone companies to use telephone

18  lines for provision of video programming services, or whether telephone companies

19  are required to obtain a cable franchise pursuant to § 53066(e) before providing cable

20  services.

21         Additional authority on which AT&T relies, Williams Communications, LLC v. City of

22  Riverside, 114 Cal. App. 4th 642 (2004), does not resolve the matter.  In Williams, the

23  California Court of Appeal addressed whether California law invalidated a city's

24  requirement that Williams, the plaintiff therein, pay a license fee to install fiber optic cable

25  in the city's streets.  See id. at 645-46.  There was evidence that such fiber optic network

26  would provide "voice, data, video, and internet transmissions services," the "content of

27  which [was] neither controlled nor manipulated by Williams."  See id. at 649, 651.  The

28  court of appeal held the City could not impose its license fee because (a) Williams was a

12

telephone company, (b) "[t]he fact that other data is transmitted over the telephone lines [did] not deprive Williams of the protection afforded by section 7901," and (c) § 50030 of the California Government Code limits the imposition of permit fees for the installation of telecommunications facilities.  See id. at 654.  Although the Williams court expressly noted that § 53066 subjects cable television companies to local regulation and franchise agreements, it found no evidence that Williams was providing cable television services, and, consequently, did not opine as to whether telephone companies can be regulated under § 53066.  See id. at 649 n.3.[1]  Similarly, because Williams had no control over the content of its video transmissions, the court had no reason to determine whether § 7901 grants telephone companies the right to act as content providers in the area of video programming.

AT&T's citation to two recently-decided Ninth Circuit cases likewise is unavailing.  In Sprint PCS Assets, L.L.C. v. City of La Canada Flintridge, 435 F.3d 993 (9th Cir. 2006), the Ninth Circuit held § 7901 bars local regulators from denying permits to telecommunications companies based on aesthetics.  See id. at 998.  Although the Ninth Circuit observed that the only substantive limitation imposed by the "plain text" of § 7901 is that telephone companies "not 'incommode the public use'" of the road, see id. at 997, the Ninth Circuit did not address whether telephone companies providing cable service may be regulated under § 53066, or, alternatively, whether § 7901 grants telephone companies the right to provide video programming services.  Quest Corp. v. City of Surprise, 434 F.3d 1176 (9th Cir. 2006) addresses Arizona law and has no relevance with respect to how the interplay of §§ 7901 and 53066 should be interpreted.

The Court finds the question of whether § 53066 governs telephone companies who provide cable television service and/or whether § 7901 grants telephone companies the right to provide video programming services constitute "novel or complex issue[s] of state

---

[1] The license imposed on Williams specifically provided that Williams could "not provide cable television services without obtaining a franchise to do so."  See id. at 649 n.3. The legality of that particular provision was not addressed in Williams.

13

law."  In exercising its discretion whether to assume supplemental jurisdiction over such a

claim the Court must consider "economy, convenience, fairness, and comity."  See

Executive Software North America, Inc. v. United States District Court for the Central

District of California, 24 F.3d 1545, 1557 (9th Cir. 1994).  Here, comity suggests that the

issues should be resolved in the first instance by a state court, and, given the early stage of

the litigation, considerations based on economy, convenience and fairness do not weigh in

favor of retaining jurisdiction.[2]  See, e.g., Qwest Communications Corp. v. City of Berkeley,

146 F. Supp. 2d 1081, 1101 (N.D. Cal. 2001) (declining to exercise supplemental

jurisdiction over claim that §§ 7901, 7901.1 and § 50030 preempt local ordinance in light of

"ambiguity and novelty" of state law questions).

Accordingly, the Court will decline to exercise supplemental jurisdiction over the third

claim for relief, and will DISMISS that claim, without prejudice to AT&T's refiling it in state

court.

### 4.  Fourth Claim – Due Process

In its fourth claim for relief, AT&T seeks a declaration that the City has deprived

AT&T of a vested and cognizable property interest without due process, in violation of the

Fifth and Fourteenth Amendments to the United States Constitution.  (See id. ¶¶ 64-67.)  In

particular, AT&T contends the City's imposition of the Franchise Condition

unconstitutionally interferes with AT&T's rights under § 7901, which AT&T contends

constitutes "a franchise to construct, upgrade and maintain its communication facilities in

the PROW free from unreasonable and discriminatory conduct."  (See id. ¶ 66.)

Defendants move to dismiss the fourth claim for relief, for failure to state a claim and, in the

---

[2] AT&T argues that the Court should retain jurisdiction because "both the sixth claim, alleging due process violations, and the eighth claim, alleging impairment of contracts, rely on AT&T's constitutionally protected state law rights under § 7901."  (See Opp. at 25.)  For the reasons set forth below, the Court will abstain with respect to those federal constitutional claims, pursuant to the doctrine of Pullman abstention.  AT&T further argues that "[t]he City's defense to the second claim, that it has an independent ground to regulate non-cable services, flies in the face of § 7901 in the case of a telephone corporation like AT&T."  (See id.)  As noted above, that argument is based entirely on state law and has no relevance with respect to the second claim that the Cable Act prohibits local regulation of AT&T's video programming.

1    alternative, request that the Court abstain, under the doctrine of Pullman abstention, from

2    hearing it.

3         Defendants argue, relying on Cox Communications PCS, L.P. v. City of San Marcos,

4    204 F. Supp. 2d 1272 (S.D. Cal. 2002), that § 7901 confers a statutory right on telephone

5    companies to install telephone lines but that it does not confer a property right to do so.

6    What Cox actually held, however, was that although the plaintiff therein "may have a right

7    protected by a federal statute, . . . the statutory right . . . is not a property or liberty right

8    protected by the Constitution." See id. at 1281 (emphasis added).  The district court in

9    Cox made no holding as to whether § 7901, a state law, confers a property right.  Although,

10   as defendants correctly note, Cox held "[t]he correct interpretation of § 7901 . . . is that

11   telephone corporations have a contract with the state on the lines that they have already

12   built, not the ones they want or may build in the future," see id., such discussion was in the

13   context of determining whether the plaintiff had a right guaranteed by the Contracts Clause

14   of the Constitution, not whether plaintiff had a property right protected under the Due

15   Process clause.  Consequently, Cox provides no authority for a determination of whether

16   AT&T has a constitutionally protected property right under § 7901.

17        To have a property interest protected by the Due Process Clause, AT&T must

18   demonstrate that it has a "legitimate claim of entitlement" that is "defined by existing rules

19   or understandings that stem from an independent source such as state law."  See Board of

20   Regents v. Roth, 408 U.S. 564, 577 (1972); see also Golden State Transit Corporation v.

21   City of Los Angeles, 686 F.2d 758, 760 (9th Cir. 1982) ("A property interest in a benefit

22   protected by the due process clause results from a legitimate claim of entitlement created

23   and defined by an independent source, such as state or federal law.").  AT&T argues that

24   § 7901 grants a "vested right" to access the public rights of way to install and maintain

25   telephone lines.  See, e.g., Williams Communications v. City of Riverside, 114 Cal. App. 4th

26   at 648 (internal quotation and citation omitted) (holding § 7901 "is a continuing offer

27   extended to telephone and telegraph companies to use the highways, which offer when

28   accepted by the construction and maintenance of lines constitutes a binding contract based

15

1   on adequate consideration, and that the vested right established thereby cannot be

2   impaired by subsequent acts of the Legislature") (internal quotation and citation omitted).

3   Whether AT&T has a property right in the use of its telephone lines to provide video

4   programming, however, depends on the interplay between § 7901 and § 53066(e), which,

5   as noted, is an unsettled issue of state law.

6       The doctrine of Pullman abstention "provides for abstention in cases presenting a

7   federal constitutional issue which might be mooted or presented in a different posture by a

8   state court determination of pertinent state law." See Richardson v. Koshiba, 693 F.2d 911,

9   915 (9th Cir. 1982) (internal citation and quotation omitted). Pullman abstention is

10  appropriate where "(1) the complaint . . . touch[es] a sensitive area of social policy into

11  which the federal courts should not enter unless there is no alternative to adjudication; (2) a

12  definitive ruling on the state issues by a state court could obviate the need for constitutional

13  adjudication by the federal court; and (3) the proper resolution of the possibly determinative

14  state law issue is uncertain." See id. Here, the second and third factors are clearly

15  present. If the state court determines that § 7901 was never intended to convey to

16  telephone companies rights to provide video programming, and that § 53066(e) applies to

17  telephone companies, the due process issue evaporates. Moreover, as discussed above,

18  the manner in which § 7901 and § 53066(e) apply to telephone companies is an issue of

19  first impression. The only remaining question, then, is whether the instant action touches

20  "a sensitive area of social policy," an issue neither party addresses. In Richardson,

21  however, the Ninth Circuit observed that regulation of public utilities constitutes a "sensitive

22  area" for purposes of Pullman abstention. See id. at 916 (citing International Brotherhood

23  of Electrical Workers v. Public Services Commission, 614 F.2d 206, 212 (9th Cir. 1980));

24  see also International Brotherhood, 614 F.2d at 212 (holding "a state's regulation of its

25  public utilities is a sensitive area of social policy into which a federal court should not

26  intrude unnecessarily"). Under California law, telephone companies are regulated as public

27  utilities. See Williams, 114 Cal. App. 4th at 647. Accordingly, the Court finds the three

28  factors for Pullman abstention have been met.

1    Under Pullman abstention, "at the request of either party, the district court should

2    retain jurisdiction of the federal constitutional issues, pending proceedings in the state

3    courts."  See id. at 918.  Accordingly, the Court will STAY further proceedings on AT&T's

4    fourth claim for relief pending the conclusion of relevant state court proceedings.

5                    **5.  Fifth Claim – First Amendment**

6         In the fifth claim for relief, AT&T seeks a declaratory judgment that "[t]he City's

7    decision to prohibit [AT&T] from installing its network improvements unless [AT&T] first

8    agrees to the cable franchise condition is an unlawful abridgement of [AT&T's] freedoms as

9    guaranteed by the First Amendment."  (See Compl. ¶ 71.)

10        The parties agree that because the Franchise Condition is content-neutral, it is

11   evaluated under intermediate scrutiny.  (See Compl. ¶ 71; Motion at 19.)  "[A] content

12   neutral regulation will be sustained if 'it furthers an important or substantial governmental

13   interest; if the governmental interest is unrelated to the suppression of free expression; and

14   if the incidental restriction on alleged First Amendment freedoms is no greater than is

15   essential to the furtherance of that interest.'"  See Turner v. F.C.C., 512 U.S. 622, 662

16   (1994) (quoting United States v. O'Brien, 391 U.S. 367, 377 (1968)).  AT&T alleges the

17   City's actions do not serve a significant government interest.  (See Compl. ¶ 71.)

18        Defendants move to dismiss AT&T's First Amendment claim on the ground that the

19   City "has made no final determination regarding terms of the agreement," and that,

20   consequently, AT&T cannot prevail unless it can "demonstrate that there is no possible

21   term of a franchise agreement that would be narrowly tailored to an important government

22   interest."  (See Motion at 19.)  AT&T does not allege that the terms of the franchise

23   agreement have not been finalized; it alleges only that the City forwarded to AT&T a 58-

24   page proposed Cable Franchise Agreement, under which agreement AT&T "would be

25   required to submit to an architectural design review process, agree to construction

26   deadlines, comply with various tests and inspections, adopt system requirements, comply

27   with interconnection requirements, pay a 5% franchise fee, agree to rate regulation, comply

28   with reporting and review requirements, acknowledge the City's right to require the

17

1  franchise and other conditions." (See Compl. ¶ 32.) AT&T alleges, however, that the

2  imposition of the Franchise Condition, not the terms of the particular  franchise agreement

3  proposed by the City, constitutes a First Amendment violation. (See id. ¶ 72.)  In other

4  words, AT&T is alleging, in essence, that no franchise agreement would be constitutional

5  under the First Amendment.

6        Where, as here, a plaintiff asserts a facial challenge to a government act, it "must

7  establish that no set of circumstances exists under which the [a]ct would be valid." See

8  United States v. Salerno, 481 U.S. 739, 745 (1987); see also Time-Warner Entertainment

9  Co., L.P. v. F.C.C., 93 F.3d 957, 972 (D.C. Cir. 1996) (quoting Salerno, 481 U.S. at 745).

10  As AT&T challenges the Franchise Condition itself, it must establish that no possible

11  franchise agreement would be constitutionally valid.  See Time-Warner, 93 F.3d at 972 ("[A]

12  holding of facial invalidity expresses the conclusion that the statute could never be applied

13  in a valid manner.").

14        As defendants point out, numerous courts have upheld the terms of various cable

15  franchise agreements as valid under the First Amendment.  See, e.g., Time-Warner, 93

16  F.3d at 971-973 (rejecting facial challenge under First Amendment to section of Cable Act

17  permitting local franchise authorities to require as part of cable franchise that channel

18  capacity be designated for public, educational, or governmental use); Comcast of

19  California, Inc. v. City of Walnut Creek, 371 F. Supp. 2d 1147, 1157-58 (N.D. Cal. 2005)

20  (denying motion for preliminary injunction; rejecting argument that City's requirement that

21  cable company finalize renewal of its franchise agreement before upgrading its system

22  violates First Amendment); Comcast of California II, L.L.C. v. City of San Jose, 286 F.

23  Supp. 2d 1241, 1250-52 (N.D. Cal. 2003) (denying motion for preliminary injunction;

24  rejecting claim that City's requirements for renewal of cable franchise violate First

25  Amendment); cf. Preferred Communications, Inc. v. City of Los Angeles, California, 754

26  F.2d 1396, 1405  (9th Cir. 1985) (rejecting argument that all regulation of cable operations

27  is invalid under First Amendment; noting "Cable television . . . requires the use of public

28  facilities, and this provides a justification for some government regulation"); Pacific West

18

1   Cable Co. v. City of Sacramento, 798 F.2d 353, 355 (9th Cir. 1986) (noting First

2   Amendment permits city to "regulate the noncommunicative aspects of cable broadcasting

3   through reasonable time, place and manner restrictions"; affirming denial of cable

4   company's motion for preliminary injunction "to be decreed free from the requirements of

5   any system at all for the allocation of Sacramento's utility resources").

6          Accordingly, because AT&T cannot show that no possible franchise agreement

7   would be valid under the First Amendment, defendants' motion to dismiss the fifth claim for

8   relief will be GRANTED, and such claim will be DISMISSED with leave to amend to allege

9   a First Amendment violation based on the terms of the particular franchise agreement

10   proposed by the City.

11                        **6.  Sixth Claim – § 1983**

12          In the sixth claim for relief, AT&T seeks damages, pursuant to 42 U.S.C. § 1983, on

13   the basis that the City's imposition of the Franchise Condition violates AT&T's rights under

14   the "Due Process Clause and the Contracts Clause of the United States Constitution, the

15   TCA, the Cable Act, and FCC rules, regulations and orders promulgated pursuant thereto."

16   (See Compl. ¶ 76.)

17                           **a.  Due Process**

18          To the extent the § 1983 claim is based on the Due Process clause, the Court, for

19   the reasons set forth above, finds Pullman abstention is appropriate, and such claim will be

20   STAYED pending the conclusion of relevant state court proceedings.

21                          **b.  Contracts Clause**

22          The one new basis for relief asserted under § 1983 is AT&T's allegation that the City

23   has violated the Contracts Clause of the United States Constitution.  AT&T alleges that §

24   7901 creates "a binding contract based on adequate consideration that establishes a

25   vested right that cannot be impaired by subsequent acts of the Legislature."  (See Compl.

26   ¶ 86.)  According to AT&T, "[o]nce a telephone corporation such as [AT&T] accepts the

27   Section 7901 franchise, as [AT&T] has, its contractual access to the public rights-of-way

28   are secured against impairment by either subsequent state acts, or by discretionary or

                                           19

1    incidental acts of local governments." (See id.)  Consequently, according to AT&T, the

2    City's imposition of the Franchise Condition violates the Contracts Clause of the United

3    States Constitution because it impairs AT&T's "vested rights" created by § 7901.  In

4    particular, AT&T alleges that its "rights under the Section 7901 franchise are impaired

5    because it is and has been precluded from upgrading and improving the communications

6    facilities within the City to enable such facilities to carry traditional telecommunications

7    services more reliably, to improve the features and performance of other existing services

8    and to provide new higher bandwidth broadband services that will accompany the network

9    improvements and also permit [AT&T] to deliver more and better video services over the

10   same network." (See Compl. ¶ 91.)

11          Defendants, relying on Cox Communications v. City of San Marcos, argue that the

12   Contracts Clause claim is subject to dismissal because AT&T does not have a contractual

13   right under § 7901 to install new facilities.  In Cox, the district court held that "[t]he correct

14   interpretation of § 7901 . . . is that telephone corporations have a contract with the state on

15   the lines that they have already built, not the ones they want or may build in the future."

16   See Cox, 204 F. Supp. 2d at 1281 (emphasis in original).  As AT&T points out, however, it

17   does not alleges in its complaint that it wishes to install new telephone lines but, rather, that

18   it seeks "to upgrade its telecommunications network currently installed in the public rights-

19   of-way . . . located within the City of Walnut Creek." (See Compl. ¶ 1.)  In Cox, the district

20   court held that § 7901 "constitutes a contractual offer by the states, acceptance of which

21   takes place when the corporation builds and operates facilities in the right-of-way."  See

22   Cox, 204 F. Supp. 2d at 1281.  Because AT&T alleges that it seeks to upgrade existing

23   facilities, Cox does not require dismissal of AT&T's Contract Clause claim.

24          Whether the Franchise Condition impairs AT&T's asserted rights under § 7901 to

25   upgrade its telecommunications network and to provide video programming without

26   obtaining a franchise from the City, however, depends on the interplay between §§ 7901

27   and 53066(e), which, as discussed above, is an unsettled area of state law.  For the

28   reasons discussed earlier with respect to AT&T's due process claim, the Court will abstain

1  from hearing AT&T's Contracts Clause claim, pursuant to the doctrine of Pullman

2  abstention.

3            **c. TCA**

4        For the reasons stated above, AT&T, in its first claim for relief, has failed to state a

5  claim under the TCA.  Consequently, AT&T's § 1983 claim will be dismissed to the extent it

6  relies on a violation of the TCA.  Whether AT&T should be permitted to amend its § 1983

7  claim, to the extent such claim is based on a violation of the TCA, depends on whether a

8  private right of action exists under the TCA.[3]  See Gonzaga University v. Doe, 536 U.S.

9  273, 290 (2002) ("[I]f Congress wishes to create new rights enforceable under § 1983, it

10  must do so in clear and unambiguous terms – no less and no more than what is required

11  for Congress to create new rights enforceable under an implied right of action.").

12        In its complaint, AT&T relies entirely on allegations that the City has violated 47

13  U.S.C. § 253(a);[4] in its opposition, however, AT&T suggests it also has a private right of

14  action under 47 U.S.C. § 253(c).  Neither the Supreme Court[5] nor the Ninth Circuit has

15  addressed whether a private right of action exists under either § 253(a) or § 253(c), and

16  other courts have reached differing conclusions on the matter.  See, e.g., Qwest Corp. v.

17  City of Santa Fe, New Mexico, 380 F.3d 1258, 1265-67 (10th Cir. 2004) (finding no private

18  right of action under any subsection of § 253); TCG Detroit v. City of Dearborn, 206 F.3d

19  618, 624 (6th Cir. 2000) (finding private right of action under § 253(c)); Bellsouth

20  _____

21      [3] The existence of a private right of action is irrelevant to AT&T's first claim, in which
AT&T seeks a declaratory judgment that the City's imposition of the Franchise Condition
22  violates the TCA.  See Bud Antle, Inc. v. Barbosa, 45 F.3d 1261, 1269 (9th Cir. 1994)
("Even in the absence of an explicit statutory provision establishing a cause of action, a
23  private party may ordinarily seek declaratory and injunctive relief against state action on the
basis of federal preemption.").

24      [4] The sixth cause of action states: "As heretofore alleged, the City's actions violate
[AT&T]'s rights, privileges and immunities under . . . the TCA (47 U.S.C. § 253)[.]" (See
25  Compl. ¶ 76.)  The only subsection of § 253 previously mentioned in the complaint is
§ 253(a).  (See id. ¶¶ 8, 36-43.)
26

27      [5] The Supreme Court recently held that a § 1983 action cannot be based on
§ 332(c)(7) of the TCA, but did not express an opinion as to whether a private right of
28  action exists with respect to other sections of the TCA.  See City of Rancho Palos Verdes,
125 S.Ct. 1453 (2005).

21

1   <u>Telecommunications, Inc. v. Town of Palm Beach</u>, 252 F.3d 1169, 1189-91 (11th Cir. 2001)

2   (finding private right of action under § 253(c) but not under § 253(a)); <u>Sprint Telephony</u>

3   <u>PCS, L.P. v. County of San Diego</u>, 377 F. Supp. 2d 886, 900-903 (S.D. Cal. 2005) (finding

4   no private right of action under § 253(a)); <u>Qwest Communications Corp. v. City of Berkeley</u>,

5   202 F. Supp. 2d 1085 (N.D. Cal. 2001) (finding no private right of action under either §

6   253(a) or § 253(c)); <u>Pacific Bell Telephone Co. v. City of Hawthorne</u>, 188 F. Supp. 2d 1169,

7   1172-75 (C.D. Cal. 2001) (finding private right of action under § 253(c) but not under

8   § 253(a)); <u>GST Tucson Lightwave, Inc. v. City of Tucson</u>, 950 F. Supp. 968, 969-71 (D.

9   Ariz. 1996) (finding no private right of action under § 253(c)); <u>NextG Networks of New York,</u>

10  <u>Inc. v. City of New York</u>, 2004 WL 2884308 at *8-10 (S.D.N.Y. 2004) (finding private right of

11  action under both § 253(a) and § 253(c)).

12          This Court, having reviewed the above-referenced opinions, finds particularly

13  persuasive the reasoning set forth in <u>Qwest Communications Corp. v. City of Berkeley</u>, 202

14  F. Supp. 2d 1085 (N.D. Cal. 2001), a case decided, by a court in this district, following both

15  an exhaustive discussion and thorough consideration of the issue.

16          Accordingly, AT&T's § 1983 claim, to the extent such claim is based on a violation of

17  the TCA, will be DISMISSED with prejudice.

18                           **d.  Cable Act**

19          For the reasons stated above, AT&T has failed to state a claim under the Cable Act,

20  and, accordingly, the § 1983 claim will be dismissed to the extent it relies on violation of the

21  Cable Act.  In light of this ruling, the Court does not reach defendants' argument that no

22  private right of action exists under the Cable Act.

23               **7.  Seventh Claim – Declaratory Relief**

24          In the seventh claim for relief, AT&T seeks a declaratory judgment "as to whether

25  [AT&T] has the right to access the PROW's to install, upgrade and maintain its facilities,

26  free from the City's Franchise Condition and any requirement for a cable franchise

27  agreement."  (<u>See</u> Compl. ¶ 80.)  As this claim is entirely duplicative of AT&T's other

28  claims, the seventh claim for relief will be DISMISSED.

1          **8. Eighth Claim – § 53066; Impairment of Contracts Under Federal and**

2     **California Constitutions**

3          In the eighth claim for relief, AT&T seeks a declaratory judgment that § 53066 of the

4     California Government Code does not apply to AT&T's telephone lines and does not

5     require AT&T to obtain a franchise in order to provide video services via its telephone lines.

6     (See Compl. ¶ 85.)  For the reasons set forth above, the Court will decline, pursuant to 28

7     U.S.C. § 1367(c), to exercise supplemental jurisdiction over the eighth claim, to the extent

8     AT&T seeks a declaratory judgment as to the scope of § 53066, because such claim raises

9     a "novel or complex issue of state law" as to the interplay between §§ 53066 and 7901.

10         AT&T further seeks a declaratory judgment that the City's imposition of the

11    Franchise Condition violates the Contracts Clauses of the federal and California

12    constitutions.  (See Compl. ¶ 92.)  For the reasons set forth above, the Court will abstain,

13    pursuant to the doctrine of Pullman abstention, from hearing the eighth claim, to the extent

14    such claim seeks a declaration that the imposition of the Franchise Condition violates the

15    Contracts Clause of the federal Constitution.  To the extent AT&T seeks a declaration that

16    the imposition of the Franchise Condition violates the California Constitution, the Court

17    declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over that

18    claim, because it raises a novel or complex issue of state law, in particular, the scope of

19    AT&T's rights and obligations under §§ 7901 and 53066(e).

20         **9. Ninth Claim – Writ of Mandate**

21         In the ninth and final claim for relief, AT&T seeks a writ of mandate, pursuant to

22    § 1085 and/or § 1094.5 of the California Code of Civil Procedure.  (See Compl. ¶¶ 93-104.)

23    Specifically, AT&T alleges the City acted in violation of state and federal law, and, in

24    particular, § 7901, by imposing the Franchise Condition on AT&T.  (See id.)  AT&T seeks a

25    writ of mandate "requiring the City to grant the encroachment permit without the unlawful

26    Franchise Condition, and to grant all other permits or approvals needed for installation,

27    operation and maintenance of [AT&T]'s facilities within PROWs in the City for the provision

28    of Project Lightspeed services without any requirement for a cable franchise agreement or

23

1    similar agreement."  (See id. ¶ 104.)

2        Because the scope of AT&T's rights under § 7901 is a novel issue of state law, the

3    Court will decline, pursuant to 28 U.S.C. § 1367(c), to assume supplemental jurisdiction

4    over AT&T's ninth claim for relief.[6]

5                                    **CONCLUSION**

6        For the reasons set forth above, the City's motion to dismiss and/or abstain is

7    hereby GRANTED in part and DENIED in part, as follows:

8        1.  The first claim for relief, in which AT&T seeks a declaratory judgment that the

9    Franchise Condition is preempted by the TCA, is hereby DISMISSED with leave to amend.

10       2.  The second claim for relief, in which AT&T seeks a declaratory judgment that the

11   Franchise Condition is preempted by the Cable Act, is hereby DISMISSED with prejudice.

12       3.  The Court declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental

13   jurisdiction over the third claim for relief, in which AT&T seeks a declaratory judgment that §

14   7901 of the California Public Utilities Code authorizes it to transport video programming

15   over its telephone lines without obtaining a separate franchise from the City.  Said claim is

16   hereby DISMISSED without prejudice to AT&T's refiling it in state court.

17       4.  The Court abstains, pursuant to the doctrine of Pullman abstention, from hearing

18   the fourth claim for relief, in which AT&T seeks a declaratory judgment that the imposition

19   of the Franchise Condition violates the Due Process Clause.  Said claim is hereby STAYED

20   pending the conclusion of any relevant state court proceedings initiated by AT&T.

21       5.  The fifth claim for relief, in which AT&T seeks a declaratory judgment that the

22   Franchise Condition violates the First Amendment, is hereby DISMISSED with leave to

23   amend.

24   _____

25       [6] AT&T's claim for a writ of mandate is a state law claim.  Although the asserted
     bases for issuance of such writ are the City's alleged violations of both federal and state
26   law, the claim remains a state law claim.  See Rains v. Criterion Systems, Inc., 80 F.3d
     339, 346 (9th Cir. 1996) (holding when a state law claim "can be supported by alternative
27   and independent theories – one of which is a state law theory and one of which is a federal
     law theory – federal question jurisdiction does not attach because federal law is not a
28   necessary element of the claim").

6.  The sixth claim for relief, pursuant to 42 U.S.C. § 1983, is hereby DISMISSED with prejudice to the extent it seeks relief based on the TCA and Cable Act, and STAYED, pursuant to the doctrine of <u>Pullman</u> abstention, to the extent it seeks relief based on the Due Process Clause or the Contracts Clause of the United States Constitution.

7.  The seventh claim for relief, in which AT&T seeks declaratory relief, is hereby DISMISSED as duplicative of AT&T's other claims.

8.  The Court declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over the eighth claim for relief, to the extent AT&T seeks a declaratory judgment as to the scope of § 53066 of the California Government Code, and said claim is DISMISSED without prejudice to AT&T's refiling it in state court.  To the extent AT&T seeks a declaratory judgment that the City's imposition of the Franchise Condition violates the Contracts Clause of the United States Constitution, such claim is STAYED, pursuant to the doctrine of <u>Pullman</u> abstention.  To the extent AT&T seeks a declaratory judgment that the City's imposition of the Franchise Condition violates the California Constitution, the Court declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over the claim, and DISMISSES said claim without prejudice to AT&T's refiling it in state court.

9.  The Court declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over the ninth claim for relief, in which AT&T seeks a writ of mandate pursuant to § 1085 and/or § 1094.5 of the California Code of Civil Procedure.  Said claim is hereby DISMISSED without prejudice to AT&T's refiling it in state court.

10.  AT&T may file an amended complaint no later than 20 days from the date of this order.

11.  AT&T shall notify the Court within seven days after AT&T either (1) initiates state court proceedings relating to the issues as to which the Court has abstained under the doctrine of <u>Pullman</u> abstention, or (2) decides not to pursue those issues in state court. In the event AT&T elects to initiate such state court proceedings, it shall notify the Court, within seven days, of any state court ruling on the issues as to which this Court has abstained under the doctrine of <u>Pullman</u> abstention.

1      This order terminates Docket No. 20.

2      **IT IS SO ORDERED**

3

Dated: April 13, 2006

4      MAXINE M. CHESNEY
      United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28